UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ZAVALA MENDOZA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. CV 16-02435-KES<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Maria Zavala Mendoza ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the ALJ's decision is AFFIRMED.

## I.
## BACKGROUND

Plaintiff applied for DIB and SSI on April 12, 2013, alleging the onset of disability on January 15, 2013, when she was 57 years old. Administrative

Record ("AR") 159-65; 166-71. On August 12, 2014, an ALJ conducted a hearing, at which Plaintiff, who was represented by counsel, appeared and testified. AR 71-89. On August 19, 2014, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 30-43.

The ALJ found that Plaintiff had the severe impairments of obesity and degenerative disc disease of the cervical and lumbar spinal areas. AR 36. Notwithstanding these impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a "full range of medium work." AR 36. The exertional requirements for medium work include "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567, 416.967. In contrast, "light" work involves lifting no more than 20 pounds and "sedentary" work involves lifting no more than 10 pounds. Id.

Plaintiff previously worked as a home attendant for her mother, who suffers from Alzheimer's disease. AR 80-81. A vocational expert ("VE") testified that according to the Dictionary of Occupational Titles ("DOT"), the job of home attendant typically requires "medium" exertion. AR 87. The ALJ compared Plaintiff's RFC to the demands of her past relevant work as a home attendant and decided that Plaintiff could still perform that kind of work. AR 39. The ALJ therefore concluded that Plaintiff is not disabled. Id.

## II.
## ISSUES PRESENTED

Plaintiff raises only one issue: whether the ALJ erred in assessing the credibility of her testimony concerning the disabling effects of her pain. See Dkt. 20, Joint Stipulation ("JS") 4. Plaintiff argues that the ALJ's reasons for discounting Plaintiff's testimony erroneously considered whether her testimony was inconsistent with the inability to work at any exertional level. Instead, Plaintiff argues, the ALJ should have focused on whether Plaintiff's

testimony was inconsistent with the inability to do <u>medium</u> work, because "[f]or an individual limited to light exertion of [Plaintiff's] age, education, and work experience, the regulations direct a finding of disabled." JS 6.

### III.
### DISCUSSION

**A.  Applicable Law.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight."  See <u>Weetman v. Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

If the ALJ finds testimony as to the severity of a claimant's pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).  In doing so, the ALJ may consider testimony from physicians "concerning the nature, severity, and effect of the symptoms of which [the claimant] complains."  <u>Id.</u>  If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing.  <u>Id.</u>

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged."  <u>Id.</u> at 1036.  If so, the ALJ may not reject a claimant's testimony "simply because

there is no showing that the impairment can reasonably produce the <u>degree</u> of symptom alleged." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. <u>Berry v. Astrue</u>, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995); <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. <u>Smolen</u>, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. <u>Smolen</u>, 80 F.3d at 1284; <u>Thomas</u>, 278 F.3d at 958-59.[1]

---

[1] The Social Security Administration ("SSA") recently published SSR 16-3p, 2016 SSR LEXIS 4, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims. SSR 16-3p eliminates use of the term "credibility" from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. <u>Murphy v. Comm'r of Soc. Sec.</u>, 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D. Tenn. May 18, 2016). SSR 16-3p took effect on March 16, 2016, and therefore is not applicable to the ALJ's decision in this case. <u>Id.</u>

B. **Summary of Plaintiff's Testimony.**

Plaintiff provided testimony concerning the disabling effects of her pain at the hearing. She testified that she stopped providing in-home care for to her mother, who suffers from Alzheimer's disease, in 2013 after her mother fell and broke her hip, rendering her unable to walk on her own. AR 80-81. At that point, Plaintiff felt that she could no longer help her mother or apply for another fulltime caregiver job because she is "in pain all the time." AR 81-82. She testified that her lower back and neck are "always hurting" and have been "for years, like since 19-something," even though she was working as a home attendant during those years and as recently as 2013. AR 82. She testified that after her mother's fall, she tried to lift her, which caused Plaintiff's pain to worsen and prompted her to visit Roybal Health Center in February 2013. AR 82-83, AR 226-42 (medical records). In June and July of 2013, she was treated for pain at the Montes Medical Group. AR 84, AR 243-47 (medical records). At the time, she was "just screaming of pain." AR 84.

She testified that she can bend over, but she cannot lift patients in wheelchairs anymore. AR 85. She estimated that she could lift 10 or 15 pounds. AR 86. She attributed her lifting limitations to back and shoulder pain. AR 85. She testified that her right shoulder was diagnosed at Montes Medical Group as "frozen." AR 84. She testified that the Clinica Medica San Felipe suggested that she receive a shot for pain, but she never obtained that treatment. AR 85.

C. **Analysis.**

The ALJ discussed at least four different reasons for discounting Plaintiff's testimony that pain disables her from performing medium work: (1) conservative course of treatment (AR 38-39), (2) lack of supporting medical evidence (AR 38), (3) her treating doctors' failure to prescribe any exertional restrictions (AR 39), and (4) her continuing part-time work as a home caregiver

for Sandra Ackerman[2] (AR 35-36). As discussed below, each of these is stated with sufficient specificity and is supported by substantial evidence in the record.

### 1. Conservative Course of Treatment.

The ALJ explained her reasoning as follows:

> The claimant's course of treatment also does not support her allegations. Dr. Montes and the claimant's treatment providers at CSF and Roybal prescribed medications for the claimant's pain, including Ibuprofen, Robaxin, Ultracet, and Vicodin. In March 2013, the claimant told her treatment provider at Roybal that her pain medications were somewhat helpful in relieving her back pain and neck pain. (Ex. 1F/1-2 [AR 211-12]; Ex. 3F/3 [AR 245]; Ex. 4F/3 [AR 250].) In contrast to the claimant's testimony, it does not appear the claimant's treating and/or evaluating physicians referred the claimant to a specialist (e.g., an orthopedic surgeon) or recommended alternative treatment modalities (e.g., physical therapy, steroid injections, surgery). This evidence of limited, conservative treatment suggests the claimant's symptoms were not as serious as she alleged.

AR 38-39.

An ALJ may consider evidence of conservative treatment in discounting testimony regarding the severity of an impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). "Infrequent, conservative treatment is not indicative of a disabling impairment." Jimenez v. Colvin, 2013 U.S. Dist. LEXIS 88614,

---

[2] Plaintiff's request to proceed in forma pauperis in this action states that she has "a side job" that pays "$90-95 a week." (Dkt. 3 at 1.) It is unclear if this "side job" is her work forMs. Ackerman or some other form of employment.

at *14 (C.D. Cal. June 24, 2013) (upholding ALJ's determination that treating "consisting of Tramadol and over-the-counter Motrin" was conservative); see also Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (conservative treatment suggests a lower level of both pain and functional limitation).

Plaintiff argues that the use of narcotic pain medicine, such as Vicodin, is not necessarily conservative treatment. JS 6. Case law does not support this argument. See Harris v. Colvin, 2016 U.S. Dist. LEXIS 66927, at *13 (E.D. Wash. May 20, 2016) ("The ALJ's statement that Plaintiff had been recommended only conservative treatment [i.e., physical therapy and cortisone injections] provides another clear and convincing reason for discounting Plaintiff's testimony in this case."); Medel v. Colvin, 2014 U.S. Dist. LEXIS 159933, at *27 (C.D. Cal. Nov. 13, 2014) (affirming ALJ's characterization of claimant's treatment as conservative where his medical records showed that he had been "prescribed only Vicodin and Tylenol for his allegedly debilitating low-back pain."); Morris v. Colvin, 2014 U.S. Dist. LEXIS 77782, at *12 (C.D. Cal. June 3, 2014) (finding that ALJ permissibly discounted plaintiff's credibility in part because plaintiff received conservative treatment consisting of use of TENS unit and Vicodin); Walter v. Astrue, 2011 U.S. Dist. LEXIS 38179, at *9 (C.D. Cal. Apr. 6, 2011) (finding that ALJ permissibly discounted plaintiff's credibility based on conservative treatment, which included Vicodin, physical therapy, and a single injection).

Plaintiff also argues that while conservative treatment may be inconsistent with total disability, it is not inconsistent with the ability to do light work. JS 6. Since Plaintiff concedes she can do light work, counsel argues there is no inconsistency to support a finding of reduced credibility. Id. Plaintiff, however, testified that she is in constant pain that is so severe, it prevents her from lifting more than 10 or 15 pounds. The ALJ did not err in finding that Plaintiff's history of conservative treatment is inconsistent with

such testimony.

Finally, Plaintiff argues that the ALJ misconstrued the record when she found that Plaintiff's doctor never recommended injections, and that this was contrary to Plaintiff's hearing testimony. JS 7. Plaintiff cites to a 1-page record from Clinica Medica San Felipe dated January 16, 2014, which Plaintiff characterizes as recommending "trigger point injections." Id. citing AR 249. While the writing is difficult to read, the document does appear to say "trigger pnt injtc" in the middle "a/p" [action potential] section. AR 249. At the bottom, there are notations under "labs ordered," but no notations under "injections." Id. Ultimately, the document does support Plaintiff's testimony at the hearing that Clinica Medica San Felipe had recommended a shot for pain. The document, however, does not undermine the ALJ's ultimate credibility finding, since it shows that Plaintiff failed to pursue even the conservative, recommended treatment of trigger point injections.

**2. Lack of Supporting Medical Evidence.**

The ALJ found that "the objective medical evidence does not support claimant's allegations." AR 38. The ALJ cited to (1) 2013 imaging studies of Plaintiff's spine which showed only "mild" degenerative changes and no "other significant abnormalities" (AR 38, citing AR 219); (2) the lack of any imaging studies of claimant's knees or shoulders (AR 38); (3) "unremarkable" findings by Dr. Montes, including "negative Spurling's, Bakody, and straight leg raise tests[3]" (AR 38, citing AR 244-46); and (4) a 2013 negative straight leg raising test (AR 38, citing AR 215).

Plaintiff argues that some of her medical records support her allegations,

---

[3] All three of these tests are used to assess pain caused by nerve root compression, also called radiculopathy.

such as x-rays showing she suffers from degenerative disc disease (AR 239-40) and physical examinations finding a decreased range of back motion (AR 233) and positive Hawkins and Neers signs[4] (AR 244). JS 6.

The evidence cited by Plaintiff is certainly objective medical evidence of an underlying impairment that could reasonably be expected to produce some back and shoulder pain. The ALJ, however, is entitled to consider whether the objective medical evidence is consistent with the degree of pain alleged, as long as the lack of supporting medical evidence is not the "sole basis for discounting pain testimony." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). In Burch, for example, x-rays showed "only mild degenerative disc disease" and "no apparent … nerve root impingement." Id. The Ninth Circuit found that the ALJ properly considered this in discrediting the plaintiff's claim of disabling back pain. Id. There is similar objective medical evidence in this case showing only mild degenerative disc disease and lack of nerve root impingement. AR 215, 219, 244-46. The ALJ properly considered that the lack of such medical evidence was inconsistent with Plaintiff's claim of constant back pain so disabling that she cannot lift more than 10 to 15 pounds.

### 3. Lack of Exertional Work Restrictions.

The ALJ noted that "the record does not contain evidence of work restrictions placed on the claimant" by her treating providers. AR 39. "Such restrictions reasonably would be expected, given the claimant's allegations of totally disabling symptoms and functional limitations." Id.

---

[4] The Hawkins test is used to evaluate shoulder injuries. "A positive Hawkins test is indicative of an impingement of all structures that are located between the … humerus and the coracohumeral ligament." See https://en.wikipedia.org/wiki/Hawkins%E2%80%93 Kennedy_test. A Neer test identifies impingement of the rotator cuff tendons.

Plaintiff argues that, because Plaintiff's treating physicians were not tasked with assessing her ability to work, their failure to express any opinions on the subject cannot be interpreted as meaningful. JS 7.

The earliest treatment notes in the record are from Roybal Health Center on February 27, 2013. Plaintiff was initially diagnosed with "cervical strain," having told the doctor that she injured her back working as a home caregiver, i.e., trying to lift her mother. AR 215-26. She reported her pain as 4 out of 10. AR 233. It was recommended that she exercise, lose weight, and return in two weeks to review the results of spinal x-rays. AR 216. When Plaintiff returned on March 13, 2013, the treatment note says that Plaintiff "currently is not working because she is in too much pain." AR 211, 228. Plaintiff scored her pain 6 out of 10. Id. She was instructed to take Ibuprofen. Id.

The next treatment record is from the Montes Medical Group and is dated May 29, 2013. AR 246. It reports that Plaintiff made the appointment "for medication refill" and "feels very stressed … because she is taking care of her ill mother and has no help." Id. Plaintiff next visited the Montes Medical Group on July 22, 2013. AR 244. The treatment note says "pt is trying to get disability. Pt is unable to work due to pain." Id. It also says that Plaintiff appears "in no acute distress." Id. Dr. Montes prescribed Ibuprofen and Vicodin. Id.

This Court's "sole inquiry is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the [ALJ]. Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld. In reaching his findings, the [ALJ] is entitled to draw inferences logically flowing from the evidence." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) (citations omitted).

Given that the Roybal Health Center must have considered Plaintiff's

functional limitations when it recommended exercise as treatment, and that the Montes Medical Group commented on Plaintiff's reported inability to work even though she was still caring for her mother, the ALJ could rationally have inferred that these treating sources would have included some restrictions on Plaintiff's exertional activities if they believed that any were medically indicated. Thus, the ALJ did not err in considering the lack of any such restrictions as a reason to discount Plaintiff's credibility.

### 4. Plaintiff's Continuing Work.

The ALJ noted that Plaintiff had received income for working as a home caregiver during the first and second quarters of 2013 (i.e., after the alleged onset of disability on January 15, 2013) and that she continued to work part-time for Sandra Ackerman one day a week for approximately three to four hours. AR 35. The ALJ then noted that she "considered this and any other inconsistent statements made by claimant in evaluating her credibility regarding her alleged symptoms and limitations." AR 35-36.

With regard to her work for Ms. Ackerman, Plaintiff argues that there is no evidence in the record concerning the exertional demands of that work, such that there cannot be a conflict between her testimony about the disabling nature of her pain and her ability to perform that work. JS 15. In fact, there is some evidence in the record. The VE testified that working as a home attendant typically requires medium exertion. AR 87. Plaintiff had an opportunity to testify concerning the exertional demands of that work as she performs it, but she did not.[5]

The ALJ may consider part-time work as inconsistent with a claim of

---

[5] Plaintiff testified that her work for Ms. Ackerman was "light" (AR 77), but counsel argues that Plaintiff did not use the word "light" as defined by social security law. JS 14-15.

11

disability. See 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). Plaintiff's ongoing work activity diminished Plaintiff's credibility, because it showed that she was able to do some work as a home attendant, despite her impairments. Moreover, at step four in the sequential analysis, the claimant retains the burden of proving he or she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). Plaintiff ultimately failed to provide the ALJ with any medical opinion that she cannot do fulltime, medium work, which is the exertional level typically required to work as a home attendant per the DOT and the VE's testimony.

## IV.
## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

Dated: December 6, 2016

_Karen E. Scott_
KAREN E. SCOTT
United States Magistrate Judge